**Marilyn E. McDANIEL,**
**Petitioner/Appellant,**

v.

**James W. McDANIEL,**
**Respondent/Respondent.**

No. 73487.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 24, 1998.

Rosen & Williams, P.C., Wallace W. Trosen, Kirksville, MO, for appellant.

Briscoe & Mobley; David C. Mobley, New London, MO, for respondent.

RHODES RUSSELL, Presiding Judge.

Marilyn E. McDaniel ("mother") appeals the trial court's judgment of modification of her dissolution with respect to James E. McDaniel's ("father") visitation with their minor children, child support, maintenance, and attorney's fees. We affirm in part and reverse in part.

The parties were married on May 29, 1983, and lived together until they separated in February 1994. Three children were born of the marriage: Danielle Suzan, born December 28, 1983; Jennifer Belle, born May 29, 1985; and Kathryn Elizabeth, born May 10, 1988. On May 10, 1995, mother filed a petition seeking a decree of legal separation which ultimately resulted, on November 27, 1995, in a Corrected Judgment and Decree of Legal Separation being entered in default against father. The decree granted father visitation with the children to be supervised by mother. The supervised visitation was to continue until further order of the court based on a showing by father of proof of treatment and rehabilitation through intensive individual therapy, and demonstration by father of adequate parenting skills, includ-

ing the ability to establish appropriate sexual boundaries and to maintain an appropriate father role with the minor children.

Approximately one year later, father filed a motion to modify the separation decree and to convert it to a decree of dissolution. In response, mother filed a counter-motion to modify and a counter-motion for contempt. On October 28, 1996, the trial court entered an order converting the decree of legal separation to a decree of dissolution.

A hearing on the motion to modify the dissolution decree was held on October 9, 1997. At the time of the hearing, father had not visited with the minor children for nearly ten months.[1] The court appointed a guardian ad litem for the minor children. After a lengthy hearing, the court entered its Judgment and Order Modifying Decree of Legal Separation[2] granting father unsupervised visitation with the minor children, terminating maintenance, modifying the child support amount, and awarding father attorney's fees. Mother appeals.

Our review is governed by the principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's order will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32; *Morgan v. Ackerman*, 964 S.W.2d 865, 868 (Mo.App.1998). In addition, we defer to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Morgan*, 964 S.W.2d at 868.

Mother's first and second points challenge the trial court's allowing father unsupervised visitation with the minor children. Mother argues the trial court erred in finding such visitation would not endanger or be detrimental to the physical or emotional health and development of the children in that such a finding was not supported by substantial evidence, was against the weight of the evidence, and was not in the best interests of the children. Mother claims the evidence showed father failed to comply with prior court orders requiring proof of treatment and rehabilitation, and failed to demonstrate adequate parenting skills and his ability to maintain an appropriate father role. Mother also asserts father and all counselors testified visitation should be initiated in a supervised setting with a trained professional.

■ In matters concerning visitation rights, this court gives great deference to the trial court's decision. *Dover v. Dover*, 930 S.W.2d 491, 494 (Mo.App.1996). The trial court may modify visitation rights if such a modification would serve the best interests of the children. Section 452.400.2 RSMo 1994;[3] *Dover*, 930 S.W.2d at 494.

■ There was sufficient evidence to support the trial court's finding that unsupervised visitation with father would serve the best interests of the children. While mother and two of the minor children testified father had been seen by the children without clothing on several occasions, these were rare, isolated incidents. No evidence was adduced to show a pattern of frequent nudity with the children. Furthermore, mother and daughters testified that on each occasion as soon as father saw them he immediately withdrew or covered his body. The trial court has a greater ability and opportunity to assess the credibility of witnesses, and it is entitled to believe or disbelieve all, part, or none of the testimony of any witness. *Brennan v. Brennan*, 955 S.W.2d 779, 782 (Mo.App.1997).

■ Mother further complains the court did not specifically find that father was treated and rehabilitated. The parties, however, did not request specific findings of fact or conclusions of law. Where the trial court does not perform this task, we consider any

---

**1.** In January 1997, mother sought and the court entered an ex parte order of protection which did not allow father any visitation with the minor children pending the outcome of the modification proceeding.

**2.** Although the court denominated its judgment as a modification of the decree of legal separa-

tion, the court had previously converted that decree to a decree of dissolution. The judgment appealed herein, therefore, in effect modified the parties' decree of dissolution.

**3.** All statutory references hereinafter are to RSMo 1994 unless otherwise indicated.

fact issue raised on appeal as having been found in accordance with the result the trial court reached. Rule 73.01(a)(2); *Rich v. Rich*, 871 S.W.2d 618, 626 (Mo.App.1994). The court did make findings that there had been a substantial and continuing change of circumstances such that visitation by the minor children with father would not endanger or be detrimental to the physical or emotional health and development of the minor children, and this finding was supported by substantial evidence.

Father testified that he received counseling with three counselors. He stated that although he did not believe he had exercised inappropriate behavior, he attended counseling in order to comply with the separation decree. Father testified that he discussed with the counselors privacy issues, parenting skills, and appropriate sexual boundaries. Father acknowledged that he did learn from the counseling sessions.

All three counselors testified at trial. Counselor David Raleigh testified that he read the separation decree prior to counseling father, and provided father counseling regarding the issues required by the decree. Raleigh stated father was cooperative, sincere, and understood appropriate sexual boundaries and appropriate clothing. Raleigh testified that father was rehabilitated and he felt father would provide an appropriate father figure for his children.

Counselor Jim May testified that he was never sure father had a problem, however, he did counsel father concerning proper boundaries and parenting skills. He stated that father was cooperative and sincere, and did appear to benefit from the sessions.

After a lengthy day of evidence and assessing the credibility of the witnesses, the court ordered a minimum amount of visitation for the father with the children on every third Saturday from 8:00 a.m. to 6:00 p.m., and on three holidays each year. The trial court examined the children in camera, heard testimony of both parties, several counselors, the children's physician, one of the children's schoolteachers, and one of father's employers, and received numerous financial documents in evidence. Considering the severely limited nature of the visitation and the supe-

rior opportunity of the trial court to appraise the situation, we cannot say that the visitation provisions amounted to an abuse of the trial court's discretion. Points I and II are denied.

■ Mother's third point contends the trial court abused its discretion in ordering her to pay $2,000 of father's attorney's fees. Mother argues the trial court erred in failing to consider the financial resources of the parties.

■ Section 452.355 provides that the trial court may, "after considering all relevant factors including the financial resources of both parties," in its discretion, award reasonable attorney's fees. *Brock v. Brock*, 936 S.W.2d 882, 888 (Mo.App.1997). Absent a manifest abuse of that discretion, such an award will not be overturned. *Id.*

In *Kreitz v. Kreitz*, 750 S.W.2d 681 (Mo. App.1988), this court considered a husband's claim that the trial court erred in awarding attorney's fees and costs to his wife because the court failed to consider the parties' financial resources, and because there was no evidence that wife could not afford her attorney's fees. We agreed, and explained that "it was an abuse of discretion for the trial court to order the husband to pay the wife's attorney's fees in light of the fact that her monthly income was more than twice that of the husband and exceeded her monthly living expenses."

We find it was an abuse of discretion for the trial court to order mother to pay father's attorney's fees. The trial court, in its Form 14, imputed income to mother in the amount of $886 per month. The court found father's monthly income to be $2,393. Father's monthly income, therefore, was nearly three times that imputed to mother. Mother's property statement reflected no available resources from which to pay father's attorney's fees. Father produced no evidence at trial that he could not afford his attorney's fees.

In addition, the trial court's award of attorney's fees is inconsistent with other terms within the decree that ordered the parties each pay $300 of the guardian ad litem's fees.

The court ordered the balance of the fees of approximately $2,000 be paid from public county funds. Considering mother's lack of ability and the inconsistent ruling regarding guardian ad litem fees, the trial court's award of attorney's fees constituted an abuse of discretion. *See Kreitz,* 750 S.W.2d at 686. Point three is sustained, and the trial court's award of attorney's fees is reversed.

■ In her fourth point, mother asserts the trial court erred in terminating maintenance. She argues there was no proof of changed circumstances in that father's ability to pay maintenance had improved and she had remained unemployed by necessity.

■ In reviewing the modification of maintenance, deference is given to the trial court's greater opportunity to judge the credibility of witnesses and the weight given opinion evidence. *Markowski v. Markowski,* 736 S.W.2d 463, 465 (Mo.App.1987). The statute gives the trial court considerable discretion as to the allowance and the amount of maintenance payments, and it is the appellant's burden on appeal to demonstrate an abuse of that discretion. *Id.*

In calculating its Form 14, the trial court imputed to mother monthly income of $886. The court specifically found in its judgment "that there is no reason why [mother] cannot be gainfully employed." Mother testified at trial that although she was able to work, she had not sought employment.

Mother maintains that she cannot seek employment outside the home because of the minor children's continuing health problems. She asserts their constant infections require treatment at home and in the hospital, rendering public school education unreasonable, and requiring her to home-school the children.

■ Dependency of a spouse is not presumed. Rather, self-sufficiency is to be encouraged. *Markowski,* 736 S.W.2d at 466. The failure of a supported spouse to seek employment and achieve financial independence within a reasonable time can form the basis for modification of a maintenance award. *Id.*

Mother has not met her burden of demonstrating that the trial court abused its discretion when it ordered termination of her maintenance based on her apparent ability to work and failure to make a good faith effort to do so. The trial court apparently did not believe that the minor children's health required her to abstain from employment and home-school the children, and we defer to the court's judgment of the evidence. *See Markowski,* 736 S.W.2d at 465, *supra.* Point denied.

■ In her final point, mother contends the trial court erred in decreasing child support. Mother maintains the court's Form 14 calculations were against the weight of the evidence in that the court imputed income to her and did not include uninsured extraordinary medical expenses.

Initially, in the argument portion of her brief, mother argues we must reverse the trial court's modification of child support because the court failed to make findings as to why it rejected the Form 14s proffered by the parties and failed to make its Form 14 a part of the record. Although not included in her point on appeal, we nevertheless have reviewed mother's complaint and find it without merit.

Mother relies on *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App.1996). In *Woolridge,* which has been cited with approval by the Missouri Supreme Court,[4] the Western District explained the requirements of Rule 88.01 and Form 14. Mother, however, misinterprets *Woolridge.* In *Woolridge,* the trial court's child support award deviated from the Form 14 amounts calculated by the parties and was silent as to its reasoning. The Western District found that meaningful appellate review of the award was precluded without a determination on the record as to the presumed correct child support amount. *Woolridge,* 915 S.W.2d at 380.

Here, however, the trial court did make a determination on the record as to its calculation of the presumed correct child support amount. The trial court specifically found that the presumed child support amount cal-

4. *See Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997).

culated under Rule 88.01 and using Form 14 was $680 per month. Furthermore, the court included sufficient findings as to how it calculated that amount. The trial court found, in its judgment, that there is no reason why mother could not be employed. The court also ordered that both parties were to split evenly all medical expenses not covered by father's medical insurance. The court stated that the Form 14 amount submitted by the parties was rebutted to that extent as being inappropriate. This is all that is required by Rule 88.01 and *Woolridge. Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 787 (Mo. App.1998).

Mother's assertions that these findings were not supported by the evidence and were against the weight of the evidence are similarly meritless. As we have explained herein, the trial court's finding that mother could be gainfully employed was supported by substantial evidence. Likewise, the trial court's assignment of extraordinary medical expenses to both parties is within the court's discretion. The only evidence mother presented to support the inclusion of extraordinary medical expenses and their amount was her testimony at trial that she expended an average of $100 per month on travel and lodging in connection with the children's health care treatment. The trial court was free to accept or reject that evidence. *Markowski,* 736 S.W.2d at 465. Mother had the burden of proof with respect to the inclusion of extraordinary medical expenses; it was her burden to show that the expenses would be recurring in nature and in what amount. *Crews v. Crews,* 949 S.W.2d 659, 668 (Mo. App.1997). We cannot convict the trial court of error for failing to include in its Form 14 calculation a specific amount for extraordinary medical expenses. Point five is denied.

The order with respect to attorney's fees is reversed. All other provisions of the judgment are affirmed.

JAMES R. DOWD and LAWRENCE E. MOONEY, JJ., concur.